## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

JUSTIN M. DAVENPORT, #S07433,  )
           )
   **Plaintiff,**      )
           )
   **vs.**         )   **Case No. 26-cv-00053-RJD**
           )
C/O BRAMMEIER (#7636),[1]   )
CHRISTOPHER MADDOX,   )
MEGAN SZOPINSKI,    )
C/O ROBERTSON,     )
C. SHEMONIA (#13594),   )
LT. MIRACLE,      )
MS. B. (Mental Health),    )
GREGORY LITTLE, and    )
JOHN BARWICK,     )
           )
   **Defendants.**    )

## MEMORANDUM AND ORDER

**DALY, Magistrate Judge:**

Plaintiff Justin M. Davenport, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Pinckneyville Correctional Center, filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. He claims his mental health crisis was ignored, he was subjected to excessive force, and he was wrongly disciplined in violation of his constitutional rights. (Doc. 1). Plaintiff seeks monetary damages. *Id.*

This case is now before the Court for preliminary review of the Complaint under 28 U.S.C. § 1915A,[2] which requires the Court to screen prisoner Complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). Any portion of the Complaint that is legally frivolous, malicious,

---

[1] Defendant Brammeier's surname is misspelled on the docket sheet (Doc. 1, pp. 1-2). The Clerk will be directed to correct the error.

[2] The Court has jurisdiction to screen the Complaint due to Plaintiff's consent to the full jurisdiction of a Magistrate Judge (Doc. 3), and the limited consent to the exercise of Magistrate Judge jurisdiction as set forth in the Memoranda of Understanding between this Court, Wexford Health Sources, Inc., and the IDOC.

fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

### The Complaint

Plaintiff makes the following allegations in the Complaint (Doc. 1): On September 23, 2024, Plaintiff refused housing so he would be sent to segregation. His grandmother had just died, and he wanted to be alone. (Doc. 1, p. 6). The next day he asked Defendant C/O Brammeier for a crisis team member, but Brammeier refused because he was doing count. On September 27, 2024, Plaintiff asked Defendant C/O Maddox for a crisis member and declared a hunger strike. Maddox responded, "Now that really isn't gonna get you one," and walked away. On second shift, Plaintiff asked Defendant C/O Shemonia and other officers for a mental health crisis provider but nobody came to assist. On September 28, 2024, an officer told Plaintiff that Defendant Ms. B from mental health would talk to him, but Ms. B never arrived. On September 29, 2024, Plaintiff was told Defendant Megan Szopinski (mental health provider) was on her way to see him, but she did not show. Plaintiff continued his hunger strike. (Doc. 1, p. 7).

On September 30, 2024, Plaintiff told Shemonia he was feeling suicidal. Plaintiff "had [his] chuck hole hostage." (Doc. 1, p. 7). Shemonia said to wait until he finished count, but he never returned. Plaintiff tore his sheet into strips, braided it into a rope, wet it, and tied it around his light fixture. He also tied a rope from his cell door to his bunk to interfere with entry to the cell when he hung himself. Shemonia saw Plaintiff putting the rope around his head and neck. Defendant C/O Robertson told Plaintiff to stop, or he would spray him with pepper spray. Plaintiff started to hang himself and Robertson emptied his pepper spray can into the cell. Defendant Lt. Miracle opened the cell door, cut the rope, and rushed in with a riot shield. Miracle slammed the shield into Plaintiff, shoving him against the wall. They cut the rope free from the light. Miracle slammed

2

Plaintiff to the ground and pulled on the rope while hitting Plaintiff on his back with the riot shield. Miracle continued pulling the rope, which apparently was still around Plaintiff's neck, until Plaintiff lost consciousness. (Doc. 1, p. 7). Plaintiff was dragged across the ground to a wheelchair and placed on crisis watch in the Health Care Unit.

On October 7, 2024, Shemonia gave Plaintiff a disciplinary ticket for 202-Damage/misuse of state property, for tearing the bed sheet and tying it around the cell door. (Doc. 1, p. 8). Defendant Little conducted a hearing on the ticket at Plaintiff's cell. Plaintiff explained he tore the bed sheet and hung himself. Little found Plaintiff guilty based on his admission, but left out the fact that Plaintiff hung himself with the sheet. Plaintiff wrote a grievance over the ticket because the prison's inmate manual states no ticket should be given if an inmate destroys state property for self-harm. Defendant Warden Barwick approved the disciplinary action. Plaintiff appealed the ticket to Barwick on October 30, 2024 but did not receive a response.

Based on the allegations in the Complaint, the Court designates the following claims in this *pro se* action:

| | |
|---|---|
| Count 1: | Eighth Amendment deliberate indifference to serious mental health needs claim against Brammeier, Maddox, and Shemonia for failing to summon mental health assistance for Plaintiff, and against Ms. B. and Szopinski for failing to provide mental health crisis treatment to Plaintiff from September 25, 2024 through September 30, 2024 when Plaintiff was suicidal. |
| Count 2: | Eighth Amendment excessive force claim against Robertson for using pepper spray on Plaintiff and against Miracle for beating and choking Plaintiff on September 30, 2024. |
| Count 3: | Fourteenth Amendment due process claim against Shemonia for issuing Plaintiff a disciplinary ticket for misuse/destruction of state property for his suicide attempt of September 30, 2024, and against Little and Barwick for punishing Plaintiff on that ticket in violation of prison rules prohibiting discipline involving destruction of state property for self-harm. |

Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.[3]

### Discussion

### Count 1

Prison officials' deliberate indifference to a prisoner's serious medical or mental health needs violates the Eighth Amendment's prohibition against cruel and unusual punishment. *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017). To state such a claim, a prisoner must plead facts and allegations suggesting that (1) he suffered from an objectively serious medical/mental health condition, and (2) the defendant acted with deliberate indifference to his medical/mental health needs. *Id.* Suicide is objectively serious. As such, "prison officials must take reasonable preventative steps when they are aware that there is a substantial risk that an inmate may attempt to take his own life." *Estate of Novack ex rel. Turbin v. County of Wood*, 226 F.3d 525, 529 (7th Cir. 2000). *See also Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 775-76 (7th Cir. 2014) (quoting *Collins v. Seeman*, 462 F.3d 757, 761 (7th Cir. 2006)).

The allegations in the Complaint are sufficient for Plaintiff to proceed on the deliberate indifference claim in Count 1 against Brammeier, Maddox, Shemonia, Ms. B., and Szopinski.

### Count 2

"Correctional officers violate the Eighth Amendment when they use force not in a good faith effort to maintain or restore discipline, but maliciously and sadistically for the very purpose of causing harm." *Wilborn v. Ealey*, 881 F.3d 998, 1006 (7th Cir. 2018); *see also Wilkins v. Gaddy*, 559 U.S. 34 (2010). Plaintiff's allegations that Robertson emptied an entire can of pepper spray

---

[3] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

into his cell during his attempt to hang himself, and that Miracle beat him with a riot shield and choked him into unconsciousness using the rope Plaintiff fashioned from his bedsheet, state viable claims in Count 2 for excessive force against Robertson and Miracle.

**Count 3**

To support a due process claim related to disciplinary proceedings, an inmate must plead facts demonstrating: (1) the deprivation of a liberty interest; and (2) the procedures he was afforded were constitutionally deficient. *Lisle v. Welborn*, 933 F.3d 705, 720 (7th Cir. 2019). To state a claim for deprivation of a liberty interest without due process, an inmate who is punished with disciplinary segregation must show that the segregation term was lengthy *and* the conditions of confinement were unusually harsh. *See Ealy v. Watson*, 109 F.4th 958, 965 (7th Cir. 2024) (quoting *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013)). *See, e.g.*, *Stallings v. Best*, No. 16-C-11063, 2018 WL 4300488, at * 4, *7 (N.D. Ill. Sept. 10, 2018) (six months in segregation with pests, bugs in food, and rodents was unpleasant but did not amount to an atypical hardship); *Rodriguez v. Veath*, No. 15-cv-36-NJR-DGW, 2017 WL 1197241, at * 9 (S.D. Ill. Mar. 31, 2017) (over 300 days in segregation did not constitute an atypical hardship despite disruptions from other inmates and constant noise, particularly because plaintiff did not clearly establish any significant physical or mental harm). Here, Plaintiff does not disclose whether his punishment included any segregation term, let alone how long it might have been. Nor does he describe what other sanctions may have been imposed.

As to the procedural component of the due process claim, an inmate who does not lose good time credit due to a disciplinary action is entitled only to informal due process protections. Plaintiff does not disclose whether he lost good conduct credits when he was found guilty of the disciplinary charge. Assuming credits were not revoked, informal due process requires only that

an inmate is provided (1) notice of the reasons for his placement in segregation, and (2) an opportunity to present his views in a written statement or hearing. *Ealy*, 109 F.4th at 965. For an allegedly false disciplinary charge, if the hearing procedure met the above requirements, the inmate has no constitutional claim so long as the decision of the disciplinary hearing board was supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994). Even a "meager" amount of supporting evidence is sufficient. *Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007).

In Plaintiff's case, he admitted that he destroyed the bed sheet. That admission satisfies the "some evidence" standard. Plaintiff focuses on the prison rule prohibiting punishment where an inmate destroys state property for self-harm. However, that alleged rule violation does not rise to the level of a constitutional claim. A federal court does not enforce state law or regulations. *See Pasiewicz v. Lake Cnty. Forest Preserve Dist.*, 270 F.3d 520, 526 (7th Cir. 2001). *See also Courtney v. Butler*, 66 F.4th 1043, 1052-53 (7th Cir. 2023) (citing *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) ("§ 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations").

For these reasons, the Complaint fails to state a colorable due process claim in Count 3 against Shemonia, Little, or Barwick. Count 3 and Defendants Little and Barwick will be dismissed without prejudice for failure to state a claim upon which relief may be granted.

### Official Capacity Claims

Plaintiff raises claims against each defendant in his or her individual and official capacities. (Doc. 1, pp. 8-9). Plaintiff's claims for monetary damages may only be pursued against state officials in their individual capacities. *Brown v. Budz*, 904 F.3d 904, 918 (7th Cir. 2005); *Shockley v. Jones*, 823 F.2d 1068, 1070 (7th Cir. 1987). Accordingly, the official capacity claims against the individual defendants are dismissed without prejudice.

**Disposition**

The Complaint states colorable claims in Count 1 against Brammeier, Maddox, Shemonia, Ms. B., and Szopinski; and in Count 2 against Robertson and Miracle. Count 3, Gregory Little, and John Barwick are **DISMISSED** without prejudice. The Clerk of Court is **DIRECTED** to correct the spelling of Defendant Brammeier's surname.

The Clerk shall prepare for C/O Brammeier, Christopher Maddox, Megan Szopinski, C/O Robertson, C. Shemonia, Lt. Miracle, and Ms. B.: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Local Rule 8.2, Defendants need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes

7

the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

Finally, based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**IT IS SO ORDERED.**

**DATED:  April 17, 2026**

*s/ Reona J. Daly*
**REONA J. DALY**
**United States Magistrate Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the Defendants' Answer, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.